**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)**

| | |
|---|---|
| **TERESA TUMBLIN**<br>4624 Summit Point Road,<br>Charles Town, WV  25414<br>    Plaintiff,<br><br>    **v.**<br><br>**THE DEPARTMENT OF JUSTICE,**<br>FEDERAL BUREAU OF INVESTIGATION<br><br>   SERVE:    William Barr, Attorney General<br>                   c/o his Designated Representative<br>                   U.S. Department of Justice<br>                   950 Pennsylvania Avenue, N.W.<br>                   Washington, D.C.  20530-0001<br><br>   SERVE:    Christopher Wray, Director<br>                   c/o his Designated Representative<br>                   Federal Bureau of Investigation<br>                   935 Pennsylvania Avenue, NW<br>                   Washington, D.C.  20535<br><br>   SERVE:    Jessie K. Liu, U.S. Attorney<br>                   for the District of Columbia<br>                   United States Attorney's Office<br>                   555 Fourth Street, NW<br>                   Washington, D.C.  20530<br><br>    Defendant. | Civil Action No. _____ |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

**COMES NOW** Plaintiff, Teresa Tumblin, (hereinafter, "Plaintiff" or "Ms. Tumblin"), by and through her undersigned counsel, and sues the Department of Justice ("DOJ" or "Defendant"), and for cause of action states the following:

## INTRODUCTION

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352), 42 U.S.C. §§ 2000e-5(f) and 42 U.S.C. § 2000e-16 ("Title VII"), as amended, for the Defendant's unlawful retaliation against the Plaintiff.

2. The Plaintiff in this case, Ms. Tumblin is a loyal and reliably performing employee of the Defendant, that works within the Federal Bureau of Investigation ("FBI").

3. During her employment with the DOJ, Ms. Tumblin has consistently performed her job duties at a level that met or exceeded her employer's expectations and continues to perform her duties in this manner at present.

4. Ms. Tumblin has been subjected to retaliatory actions perpetuated by managerial agents at the DOJ.

5. The managerial employees responsible for the retaliatory actions taken against the Plaintiff were acting in their official capacity as employees of the Agency at the time that they took all actions which are the subject of the instant complaint.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Complaint pursuant to Section 2000 *et. seq.*, Title VII of the Civil Rights Act of 1964, *as amended*, and 28 U.S.C. Sections 1331, 1337 and 1343. Jurisdiction is also appropriate as the actions complained of herein are actions and employment practices of Defendant, an Agency of the federal government.

7. Venue is proper in the District of Columbia under 42 U.S.C. § 2000e-5(f) (3), incorporated in 42 U.S.C. § 2000e-16(d), because the events giving rise to the claims relate to Plaintiff's employment by Defendant which is headquartered in the District of Columbia.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On April 26, 2019, Plaintiff received a Final Agency Decision ("FAD") from Defendant's EEO Office regarding the EEO complaint filed by Plaintiff with Defendant's EEO office associated with Complaint No. 2017-00240.

9. The receipt of this FAD represented the end of the administrative processing of Plaintiff's EEO complaint and authorized Plaintiff initiate the instant suit.

10. On July 11, 2019, Plaintiff received a FAD regarding the EEO complaint filed by Plaintiff with Defendant's EEO office associated with Complaint No. 2015-00091.

11. The receipt of this FAD represented the end of the administrative processing of Plaintiff's EEO complaint and authorized Plaintiff to file the instant action

12. Plaintiff has exhausted all of her administrative remedies as to the above-referenced complaints.

13. Plaintiff Tumblin now timely files this civil action within ninety days (90) of the receipt of her first FAD which was issued on April 26, 2019.

**PARTIES**

14. Plaintiff, Teresa Tumblin, is a current employee of Defendant.

15. Plaintiff is a resident of the State of West Virginia.

16. Plaintiff is currently domiciled at 4624 Summit Point Road, Charles Town, WV 25414.

17. The Defendant, DOJ, is an agency of the United States Government, and is headquartered at 950 Pennsylvania Avenue, N.W., Washington, D.C. 25414

# FACTS

18. Plaintiff, Teresa Tumblin, is a current employee of Defendant.

19. Plaintiff began her employment with Defendant on June 8, 2008.

20. Plaintiff was an employee of Defendant at all times relevant to the instant complaint.

**Plaintiff Engages In Protected Activity**

21. In June 2009, Plaintiff engaged in activity protected by Title VII of the Civil Rights Act of 1964 by filing a complaint with Defendant's EEO Office.

22. Plaintiff's 2009 EEO complaint was resolved through mediation with representatives of Defendant's management.

23. On February 12, 2015, Plaintiff engaged in further EEO activity by initiating EEO counseling with Defendant's EEO office.

24. On March 28, 2015, Plaintiff filed a Formal Complaint of Discrimination which was ultimately designated as complaint no. FBI-2015-00091.

25. On July 8, 2017, Plaintiff filed an additional Formal Complaint of Discrimination subsequently designated complaint no. FBI-2017-00240.

**Plaintiff Suffers Retaliation**

26. In November 2012, Complainant was selected as a Quality Assurance Reviewer in Defendant's Quality Resource Management Unit ("QRMU").

27. In this position, between November 2012 and February 7, 2014, Plaintiff was supervised by Defendant's employee Cheryl Waddell, who served as Defendant's Quality Assurance Team Lead.

28. During this period, Plaintiff's second-line supervisor was former Supervisory Management and Program Analyst, Keith Owen.

29. Plaintiff's third-level supervisor was Assistant Section Chief, Gabriel Ford.

30. Immediately upon her arrival in the QRMU, Plaintiff noted that Ms. Waddell treated her in a notably different manner than her co-workers.

31. Ms. Waddell treated Plaintiff with hostility in her personal interactions with Plaintiff.

32. Ms. Waddell regularly and repeatedly lost her composure in her interactions with Plaintiff raising her voice and berating Plaintiff.

33. Ms. Waddell also displayed hostility towards Plaintiff in her review of Plaintiff's work regularly marked Plaintiff's work as "QA error," a designation that she did not apply to the work performed by Plaintiff's co-workers.

34. In January 2014, Ms. Waddell further impeded Plaintiff's ability to perform the duties of her position by partially revoked the Plaintiff's access to Defendant's Audit System.

35. Plaintiff contemporaneously brought Ms. Waddell's actions to the attention of Defendant's management.

36. On or about January 30, 2014, after Plaintiff brought Ms. Waddell's actions to the attention of Defendant's management officials, Plaintiff's third-level supervisor, Mr. Ford threatened Plaintiff's position in the QRMU by informing her that he was considering removing her from the QRMU as a result of her interactions with Ms. Waddell.

37. On February 9, 2015, Plaintiff and a fellow employee of Defendant, Ann Nash, were taking a proctored certification examination.

38. During the testing, Ms. Nash was seated next to the Plaintiff and repeatedly used profanity within the hearing of Plaintiff and management officials in the employ of Defendant.

39. Plaintiff's aversion to profanity was known to Ms. Nash and Plaintiff's other co-workers.

40. Defendant's management officials never applied any corrective action to Ms. Nash for her use of profanity in the workplace.

41. In August 5, 2015, Ms. Nash confronted Plaintiff regarding the fact that Plaintiff had named her in Plaintiff's EEO complaint.

42. Ms. Nash displayed hostility to Plaintiff and accused Plaintiff of interfering with the advancement of her career by virtue of naming her in Plaintiff's EEO complaint.

43. No disciplinary or corrective action was imposed upon Ms. Nash by Defendant for this incident.

44. Based on information and belief, Ms. Waddell was informed of Plaintiff's prior EEO activity by Defendant management employee Rita Covington shortly prior to Plaintiff coming under Ms. Waddell's supervision.

45. Mr. Ford was aware of Plaintiff's prior EEO activity when he threatened Plaintiff's position in the QRMU as he was an attendee of the mediation, which concluded Plaintiff's first EEO complaint.

46. Ms. Nash was aware of Plaintiff's prior EEO activity at the time of the certification testing in February 2015.

47. The workplace hostility displayed towards Plaintiff by Ms. Waddell, Mr. Ford, and Ms. Nash was a result of Plaintiff's EEO activity and the negative reputation within

Defendant's organization that Plaintiff's prior EEO activity garnered.

**Plaintiff's Retaliatory Non-Selection**

48. On or about March 10, 2017, Defendant issued a canvass for a rotational position in the training team of its QRMU.

49. At the time of the issuance of the canvass, Plaintiff was serving Defendant as a quality assurance auditor in the QRMU on a temporary duty assignment.

50. Plaintiff applied for the vacant position on Defendant's QRMU training team.

51. Defendant's management employee Mark Vaughn was the Unit Chief of Defendant's QRMU at the time of Plaintiff's application.

52. Upon receipt of Plaintiff's application, Mr. Vaughn declined to consider Plaintiff for the training team position resulting in Plaintiff not being selected for the canvass.

53. Plaintiff was qualified for the QRMU training position.

54. Plaintiff served in the position for one month on a temporary duty assignment and, therefore, was familiar with the duties of the position.

55. Plaintiff had also completed Defendant's Adjunct Faculty Program further qualifying her to fill the training team canvass.

56. Based upon information and belief, the selectee for the position had not completed Defendant's Adjunct Faculty Program at the time of their selection for the position.

57. Based upon information and belief, the selectee for the position had no practical experience working on the QRMU training team prior to their selection.

58. Plaintiff's qualifications for the position were objectively superior to those of the selectee.

59. At the time that Mr. Vaughn chose to not consider Plaintiff's application for a position on the QRMU training team, he was aware of Plaintiff's prior EEO activity.

60. Plaintiff was denied consideration for the QRMU training team position as a result of her prior EEO activity of which Mr. Vaughn had knowledge.

**Injury to Plaintiff**

61. As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, irreparable loss and injury, including but not limited to, pain and suffering, physical injury and sickness, economic loss, humiliation, embarrassment, indignity, mental and emotional distress, and the deprivation of her rights to equal employment opportunity.

62. Through the actions of Defendant's employees, agents, and/or representatives described above, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights, without Plaintiff in anyway contributing thereto.

## COUNT ONE

### (VIOLATION OF TITLE VII- RETALIATORY HOSTILE WORK ENVIRONMENT)

63. Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 to 62 as if fully set forth herein.

64. Title VII prohibits discrimination in employment on the basis of retaliation for participating in the EEO process or opposing any act which is made unlawful by Title VII.

65. Plaintiff is a member of a protected class as she has repeatedly participated in the EEO process and opposed actions which she genuinely believed constituted violation of Title VII.

66. During her employment with Defendant, Plaintiff was subjected to a hostile work environment by her supervisors Ms. Waddell and Mr. Ford, as well as her co-worker Ms. Nash, that

affected the terms, conditions, and privileges of her employment as a result of her EEO activity.

67. The hostile work environment suffered by Plaintiff was typified by heightened scrutiny of her work, interference with her work by Defendant's management personnel, hostile conduct by Defendant's supervisory employees as well as threats to Plaintiff's career with Defendant.

68. Upon information and belief, Plaintiff's similarly situated co-workers who had not engaged in protected activity were not scrutinized in their work and were not treated with open hostility in the work place as Plaintiff experienced.

69. As a government agency, the DOJ must comply with Title VII.

70. The foregoing actions by Defendant constitute retaliation against the Plaintiff because of her EEO activity and infringe on her exercise and enjoyment of her right to be free from unlawful and retaliatory employment practices, in violation of Title VII.

71. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, and other financial losses.

72. By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

**COUNT TWO**

**(VIOLATION OF TITLE VII – DISPARATE TREATMENT RETALIATION)**

73. Plaintiff re-alleges and incorporates by reference each and every allegation in

paragraphs 1 to 72 above, as if fully set forth herein.

74. Title VII prohibits retaliation in employment and protects employees engaging in statutorily protected activity.

75. As a government agency, the DOJ must comply with Title VII.

76. Plaintiff engaged in protected EEO activity when she engaged in EEO activity by seeking counseling from Defendant's EEO office and also by filing formal complaints of discrimination with Defendant's EEO office.

77. The retaliatory actions that Plaintiff experienced affected a term, condition, or privilege of her employment, by virtue of denying Plaintiff an employment opportunity with Defendant for which she was qualified.

78. The management officials responsible for Plaintiff's retaliatory non-selection were aware of Plaintiff's prior EEO activity.

79. Defendant's management officials were motivated in the decision to deny Plaintiff a position on the QRMU training team by virtue of animus towards Plaintiff caused by Plaintiff's prior EEO activity.

80. The foregoing actions by Defendant constitute Defendant retaliating against Plaintiff because of her opposition to unlawful employment practices and/or because she made complaints of unlawful employment practices in violation of Title VII.

81. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered, and continues to suffer, harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, lost earnings, lost benefits, loss of economic opportunity, and other financial loss.

82. By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable

remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Teresa Tumblin, respectfully prays that this Court grant her the following relief:

a) Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII.

b) Order the Defendant institute a policy and procedure to be implemented against retaliation;

c) Award compensatory damages not to exceed Three Hundred Thousand Dollars ($300,000.00), which would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, and medical costs and expenses incurred as a result of the conduct of Defendant alleged herein;

d) Award lost wages;

e) Award back pay and benefits, with interest;

f) Award future wages;

g) Award reasonable attorney fees, costs, and expenses incurred for this action;

h) Order such other relief as this Honorable Court deems just and proper.

**Equitable Relief**

i) Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

j) As the continued employment of the supervisors responsible for the actions alleged herein, without training in equal employment opportunity law, rules and regulations, represents a clear and present danger to the employees of Defendant which could result in further illegal actions on the part of Defendant, by and through its agents, servants, and employees, Plaintiff requests all equitable relief which can be afforded to her under the law

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues in this case so triable.

Dated: July 24, 2019

                         Respectfully submitted,

                         /S/ K. Scott Rocio
                         K. Scott Rocio, Esq.
                         Associate
                         Labor & Employment Law Practice Group
                         (DC Bar No. 1032050)

                         TULLY RINCKEY PLLC
                         815 Connecticut Avenue N.W., Suite 720
                         Washington, DC 20006
                         Phone: (202) 787-1900
                         Fax: (202) 640-2059
                         krocio@fedattorney.com

                         **ATTORNEY FOR PLAINTIFF**