**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

TERESA TUMBLIN,

        *Plaintiff*,

    v.

WILLIAM BARR, ATTORNEY GENERAL
OF THE UNITED STATES,

        *Defendant.*

No. 19-cv-2204 (DLF)

---

**MEMORANDUM OPINION**

Before the Court is Attorney General William Barr's[1] Partial Motion to Dismiss or,
Alternatively, for Partial Summary Judgment, Dkt. 17. For the reasons that follow, the Court
will grant the motion.

**I.      BACKGROUND**

The Court takes the well-pleaded factual allegations in the complaint, Dkt. 1, as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Teresa Tumblin, an employee of the Federal
Bureau of Investigation (FBI), alleges that she was retaliated against for engaging in protected
activity in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5(f); 2000e-16, *et
seq.* Second Am. Compl. (Compl.), ¶ 1, Dkt. 15. Tumblin filed her first equal employment
opportunity (EEO) complaint in 2009, *id.* ¶¶ 27–28, which was resolved through mediation, *id.*
Tumblin later made three additional complaints, in 2015, 2017, and 2018 respectively. *Id.* ¶¶
29–32.

---

[1] Title VII states that "the head of [the plaintiff's] department, agency, or unit, as appropriate
shall be the defendant" in civil actions. 42 U.S.C. § 2000e-16(c). The current Attorney General,
William Barr, is the head of Tumblin's agency and thus the proper defendant in this case.

The underlying events that gave rise to Tumblin's complaints began in 2012, when she began working as a quality assurance reviewer under team lead Cheryl Waddell. *Id.* ¶¶ 33–34. Tumblin believed that Waddell was aware of her 2009 EEO complaint and treated her with hostility as a result. *Id.* ¶¶ 38, 51, 54. In particular, "Waddell regularly and repeatedly lost her composure in her interactions with Plaintiff raising her voice and berating Plaintiff," *id.* ¶ 39, and "regularly marked Plaintiff's work as 'QA error,' a designation that she did not apply to the work performed by Plaintiff's co-workers," *id.* ¶ 40. Waddell also partially revoked Tumblin's access to the FBI Audit System. *Id.* ¶ 41. Tumblin reported her concerns about Waddell to management. *Id.* ¶ 42. A manager then told Tumblin that he was considering removing her from the quality assurance unit as a result of her troubled relationship with Waddell. *Id.* ¶ 43. In a separate incident in February 2015, Tumblin was seated near Ann Nash, another employee in the quality assurance unit. *Id.* ¶¶ 44–45. Nash used profanity in the earshot of Tumblin, even though Nash was aware of Tumblin's aversion to profanity. *Id.* ¶¶ 45–46.

In another set of incidents, Tumblin alleges that she applied for various positions but was rejected even though she was more qualified than all of the other applicants. *Id.* ¶¶ 59, 62, 69–70, 74, 79–81. In April 2015, she informed a supervisor that she was interested in joining the National Name Check Program training team, *id.* ¶ 55; in December 2015, she applied for another new position but was not chosen, *id.* ¶ 61; in February 2016, she was not selected for a one-year detail on the quality assurance team, *id.* ¶ 66; in March 2017, she applied for a vacant position on a Quality Research Management Unit training team, *id.* ¶¶ 71, 73; and in August 2018, she learned that another employee had been chosen for a rotational assignment for back-to-back terms even though Tumblin had been previously denied the opportunity, *id.* ¶ 96.

Finally, Tumblin cites a variety of other events that she alleges are related to her EEO activity.  In May 2018, Tumblin was given a Mid-Year Progress Review of "successful" overall, rather than the "excellent" rating she received the year before.  *Id.* ¶¶ 84–85.  When she asked about the rating, Tumblin was not given specific feedback.  *Id.* ¶¶ 86–87.  Next, in August 2018, Tumblin requested to "earn compensatory time as she did not have enough leave built in to take care of her mother."  *Id.* ¶ 91.  She alleges that she had been allowed to do so in the past but was denied in retaliation for her EEO activity.  *Id.* ¶¶ 92–94.  Tumblin also asked, more than once, to use official time to work on her EEO complaints and was either rejected or did not receive a response.  *Id.* ¶¶ 88, 103–04.  And finally, Tumblin alleges that her "return rate was manipulated" in retaliation for her prior protected activities.  *Id.* ¶ 108.

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may generally consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial."  *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.   ANALYSIS

The Attorney General moves to dismiss three of the five counts in Tumblin's complaint. *See* Mot. to Dismiss.  First, he argues that count IV should be dismissed because Tumblin failed to exhaust her administrative remedies, or alternatively, because she has not alleged a causal connection between her nonselection for the National Name Check Program training team and her protected activities.  *See id.* at 8.  Next, he argues that count II should likewise be dismissed because Tumblin has failed to plausibly allege a causal connection between her nonselection for

the Quality Research Management Unit and her protected activities. *See id.* at 11.  Finally, he

argues that count I should be dismissed because Tumblin has not alleged the requisite "severe or

pervasive" harassment or causal connection to support a retaliatory hostile work environment

claim. *See id.* at 14.

     **A.**     **Nonselection Claims (Counts II and IV)**

          1.     *The National Name Check Program Nonselection (Count IV)*

Tumblin's claim of retaliatory nonselection in count IV fails because Tumblin did not

exhaust her administrative remedies on this claim.  Title VII requires that plaintiffs "timely

exhaust their administrative remedies before bringing their claims to court." *Payne v. Salazar*,

619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotations and alteration omitted).  This exhaustion

requirement "serves the important purposes of giving the charged party notice of the claim and

narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904,

907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted).

"Under Title VII, employees who believe they have been discriminated against must first

consult an Equal Employment Opportunity (EEO) Counselor within 45 days of the alleged

discriminatory acts." *In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006); *see* 29 C.F.R. §

1614.105(a)(1).  Tumblin first contacted the EEO Counselor about the alleged retaliatory

nonselection on October 21, 2015.  *See* Mot. to Dismiss Ex. 7 (EEO Complaint, FBI-2016-

00024, December 1, 2015), Dkt. 17-9.[2]  Meanwhile, Tumblin first found out that she was not

---

[2] In evaluating whether a Title VII plaintiff has exhausted her administrative remedies, the Court
may take notice of public records, such as EEOC and Board complaints and decisions, without
converting a motion to dismiss into a motion for summary judgment. *See Vasser v. McDonald*,
228 F. Supp. 3d 1, 14 (D.D.C. 2016); *see also Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C.
2009) ("A plaintiff's EEOC charge and the agency's determination are both public records, of
which this Court may take judicial notice." (internal quotation marks and alteration omitted)).

selected for the role on July 1, 2015.  Compl. ¶ 58.  This represents a time gap of 112 days, well in excess of the 45-day requirement.  *See Panarello v. Zinke*, 254 F. Supp. 3d 85, 100 (D.D.C. 2017), *aff'd sub nom. Panarello v. Bernhardt*, 788 F. App'x 18 (D.C. Cir. 2019) (dismissing Title VII discrimination claims for failure to exhaust because the claims arose more than 45 days before the complainant initiated contact with an EEO Counselor); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 178 (D.D.C. 2016) (same).  Thus, as to this alleged retaliatory nonselection, Tumblin failed to exhaust her remedies within the time period required.

Tumblin does not dispute this fact, but instead argues: (1) that the FBI waived this argument by not dismissing her claim when she first contacted the EEO officer in October of 2015, and (2) that equitable tolling should excuse the delay.  *See* Pl.'s Opp'n at 12, Dkt 18.  For waiver, Tumblin relies on *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019), for the proposition that an agency waives an exhaustion argument when they raise it too late in the course of the litigation.  *See id.*

In general, "agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint . . . ."  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).  In *Fort Bend*, the Supreme Court held that a Title VII procedural requirement was "mandatory without being jurisdictional" and thus could be forfeited where the defendant delayed bringing the argument.  139 S. Ct. at 1852.  But unlike here, the defendant in that case did not raise its procedural argument "until after an entire round of appeals all the way to the Supreme Court."  *Id.* at 1848 (internal quotation marks omitted).  Here, by contrast, the FBI raised its exhaustion argument in its first substantive motion in this litigation, *see* Def.'s First Mot. to Dismiss at 6, Dkt. 10-1, and in the final agency decision as well, *see* Mot. to Dismiss Ex. 8 at 14–15 (Final Agency Decision, FBI-2016-00024, September 6, 2019); *see also Vasser v.*

*McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016) (noting that courts take judicial notice of Final

Agency Decisions for exhaustion purposes without converting to summary judgment where the

authenticity of the public document is not disputed).  For these reasons, the exhaustion argument

has not been forfeited or waived.

As for Tumblin's equitable tolling argument, it is true that the 45-day timing requirement

"is subject to . . . equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

(1982).  "In Title VII cases . . . courts have excused parties, particularly those acting pro se, who

make diligent but technically defective efforts to act within a limitations period."  *Bowden*, 106

F.3d at 438.  But this doctrine is "to be applied sparingly."  *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 113 (2002).  Tumblin argues that because she had overlapping open

complaints when she contacted the EEO officer in October, she assumed that her new October

complaint would be included in the case opened earlier in 2015.  Pl.'s Opp'n at 12–13.  Given

Tumblin's familiarity with the EEO complaint process, *see* Compl. ¶¶ 27–32, however, she has

not shown that this assumption reflected anything more than the kind of "garden variety claim of

excusable neglect" to which "equitable tolling principles do not extend."  *Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 96 (1990).  In sum, because Tumblin failed to exhaust

administrative remedies within the time required and her equitable tolling arguments are

unavailing, the Court need not consider the defendant's causation arguments, *see* Mot. to

Dismiss at 12–13, and will dismiss count IV.

2.     *The Quality Research Management Unit Nonselection (Count II)*

As for Tumblin's retaliatory nonselection claim in count II, which relates to the Quality

Research Management Unit training position, *see* Compl. ¶ 127, the Attorney General argues that

Tumblin has failed to plausibly allege a causal connection between her protected activities and her nonselection for this position.  Mot. to Dismiss at 13–14.

Title VII "both prohibits employers from engaging in employment practices that discriminate . . . and bars them from retaliating against an employee because she has opposed any such practice."  *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks and alterations omitted).  "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) *because* he or she had brought or threatened to bring a discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (emphasis added).  The causation prong "may be established if the plaintiff alleges that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter."  *McNair v. Dist. of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016).

As an initial matter, Tumblin "need not plead facts showing each of these elements in order to defeat a motion under Rule 12(b)(6)."  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015).  After all, retaliation "can be proven by direct evidence rather than through the *McDonnell Douglas* prima facie case."  *Id.* at 162 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  But Tumblin must plead facts sufficient to nudge her claims "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570); *Menoken v. McGettigan*, 273 F. Supp. 3d 188 (D.D.C. 2017) (applying *Iqbal*'s pleading standard in the retaliation context).

To support her claim of retaliation, Tumblin only alleges that: (1) "The management officials responsible for Plaintiff's retaliatory non-selection were aware of Plaintiff's prior EEO activity," Compl. ¶ 126, and (2) "Defendant's management officials were motivated in the

decision to deny Plaintiff a position on the QRMU training team by virtue of animus towards Plaintiff caused by Plaintiff's prior EEO activity." Compl. ¶ 127. Because Tumblin does not allege any facts to support a direct inference of causation, *see* Pl.'s Opp'n at 14–15, the basis for such an inference must be the temporal proximity of her prior EEO activity and the later nonselection. *See McNair*, 213 F. Supp. 3d at 89. Although no bright line rule exists, "this Circuit has generally found that a two- or three-month gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation." *Jones v. D.C. Water & Sewer Auth*., 922 F. Supp. 2d 37, 42 (D.D.C. 2013); *see, e.g.*, *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (holding that a two-and-a-half-month lapse was too long to assume temporal proximity).

The last EEO activity Tumblin engaged in before she applied for a position on the Quality Research Management Unit training team occurred in early to mid-2015. *See* Compl. ¶ 29 (plaintiff initiated EEO counseling on February 12, 2015), ¶ 30 (plaintiff filed a formal complaint of discrimination on March 28, 2015). Meanwhile, she was not selected for the position in March 2017. *See* Compl. ¶ 71. This represents a time gap of approximately two *years* between any protected activity and the adverse action. *Compare* Compl. ¶ 30 (plaintiff's last EEO activity before July 2017 was on March 28, 2015), *with* Compl. ¶ 71 (plaintiff applied for the quality research management unit training position "on or about March 10, 2017"). This gap is far off the two to three *month* benchmark that courts in this circuit typically use as a metric, and is certainly not "very close" in time, as required for a plausible inference of temporal proximity. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). For this reason, the Court will dismiss count II of Tumblin's complaint.

**B.      Retaliatory Hostile Work Environment Claim (Count I)**

In count I of her complaint, Tumblin alleges that she was subjected to a hostile work environment in retaliation for her protected activities.  Compl. at 13.  A hostile work environment exists where a plaintiff's employer subjects her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).  In assessing whether a hostile work environment exists, courts "look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201.  "The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."  *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (internal quotation marks omitted).  This prevents Title VII from becoming "a general civility code" that regulates "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks omitted).

To support her hostile work environment claim, Tumblin alleges that she experienced "heightened scrutiny of her work, interference with her work by Defendant's management personnel, hostile conduct by Defendant's supervisory employees as well as threats to Plaintiff's career with Defendant."  Compl. ¶ 115.  Her allegations of "hostile conduct" include incidents that occurred during two separate time periods.  Between 2012 and 2015, supervisor Waddell treated Tumblin with "hostility" in their "personal interactions," "regularly and repeatedly los[ing] her composure in her interactions with [Tumblin,] raising her voice and berating [Tumblin]," *id.* ¶ 39; Waddell marking Tumblin's work as "QA Error" while not using that

10

designation with other employees, *id.* ¶ 40; Waddell "partially revok[ing]" Tumblin's access to the "Audit System," *id.* ¶ 41; another supervisor considering removing Tumblin from the unit because of the negative relationship with Waddell, *id.* ¶ 43; and another employee using profanity in the earshot of Tumblin despite Tumblin's known aversion to profanity, *id.* ¶ 45.  In 2018 and in 2019, Tumblin received a progress review of "successful" overall, *id.* ¶ 84; her various requests for special use of work time and time off were denied, *id.* ¶¶ 88, 91–92, 103; and her "return rate was manipulated," as a March 14, 2019 document "included less 'items worked' than a March 7, 2019 document, *id.* ¶¶ 105–108.  *See* Pl.'s Opp'n at 17–19 (describing these incidents).

These allegations, taken as true and in the light most favorable to Tumblin, do not plausibly state a claim for "severe or pervasive" harassment.  First, the factual allegations appear to involve discrete acts.  "As a general matter, this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *Baloch*, 517 F. Supp. 2d at 364; *see also Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (*Baird II*) (holding that "intermittent spats . . . spanning eight years and involving different people doing different things in different contexts" did not establish a hostile work environment).  Indeed, "the constituent acts of a hostile-work-environment claim must be adequately linked to one another." *Baird II*, 792 F.3d at 171.  Tumblin's allegations span seven years, include distinct time frames, and involve different actors.  *Compare* Compl. ¶¶ 33–54 (describing incidents from 2012 through 2015 involving Nash, Waddell, and Gabriel Ford), *with id.* ¶¶ 84–105 (describing separate incidents in 2018 and 2019 with different actors).  What is more, there is no apparent connection between most of these incidents.  For example, there is no indication that the profanity incident, the ongoing tension with Waddell, and the later

performance review and requests for time off were in any way "linked to one another." *Baird II*, 792 F.3d at 171. "The sheer volume of [Tumblin's] allegations does not change" this deficiency. *Id.* at 172.

Even considered together, these facts do not meet the requisite severity or pervasiveness to state a claim for a retaliatory hostile work environment. *See Morgan*, 536 U.S. at 117 (noting that the workplace must be permeated with "discriminatory intimidation, ridicule, and insult"). The alleged disagreements largely related to issues with Tumblin's work product, were not physically threatening, and ultimately consisted of the kinds of "ordinary tribulations of the workplace" that fall outside the ambit of Title VII. *Faragher*, 524 U.S. at 787; *see, e.g.*, Compl ¶¶ 40, 84, 105–108. "[C]ourts have been hesitant to find a claim for hostile work environment when a complaint contains no allegations of discriminatory or retaliatory intimidation, ridicule, or insult in the plaintiff's day-to-day work environment and relies instead on incidents of allegedly discriminatory non-promotions and other performance-based actions." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014) (internal quotation marks omitted).

Tumblin does allege that Waddell "regularly and repeatedly lost her composure in her interactions with [Tumblin,] raising her voice and berating" her. Compl. ¶ 39. But this allegation alone is insufficient to salvage Tumblin's hostile work environment claim. For one, this circuit has explained that "occasional . . . lost tempers" and "workplace disagreements" are "the kind of conduct courts frequently deem uncognizable under Title VII." *Baird II*, 792 F.3d at 171. For another, Tumblin does not allege sufficient factual detail to round out this allegation. She does not provide, for example, any detail about why, how frequently, or how severely Waddell berated her. *See generally* Compl. ¶¶ 38–41. In fact, Tumblin fails to allege any *specific* incidents of Waddell raising her voice. *Id.* Without further factual allegations, the Court

cannot conclude that Waddell's behavior was anything more than an "occasional . . . lost temper[]" in "workplace disagreements." *Baird II*, 792 F.3d at 171.

Considered separately or together, the allegations in count I do not meet the requisite severity or pervasiveness to state a hostile work environment claim. *See, e.g.*, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93–94 (D.D.C. 2009) (plaintiff failed to state a claim for relief where his claim was based on allegations that management "passed over [the plaintiff] for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, . . . and engaged in a series of discussions to end his eligibility for workers' compensation and to terminate his employment at NASA, before finally firing him" (internal quotation marks omitted)); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that "personality conflicts . . . are not actionable" under Title VII); *Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014) ("[T]he ordinary tribulations of the workplace, a series of petty insults, vindictive behavior, and angry recriminations . . . are not actionable under Title VII." (internal quotation marks and citation omitted)). Accordingly, the Court declines to address the defendant's causation argument, *see* Mot. to Dismiss at 18-19, and will dismiss count I of Tumblin's complaint.

## CONCLUSION

For the foregoing reasons, the partial motion to dismiss is granted.  An order consistent with this decision accompanies this memorandum opinion.


DABNEY L. FRIEDRICH
United States District Judge

December 3, 2020